## FINKBINE LUMBER CO. v. GULF & S. I. R. CO.*

(Circuit Court of Appeals, Fifth Circuit. December 30, 1920.)

No. 3477.

1. **Commerce ☞85—Charges paid for switching done by shipper are subject to Commission's jurisdiction.**

Under Interstate Commerce Act, § 15, as amended (Comp. St. § 8583), providing that a shipper rendering a service connected with the transportation can receive only a just allowance therefor, and authorizing the Commission to determine a reasonable charge as the maximum to be paid by the carrier for the services rendered, the amount which a lumber company is entitled to receive from a carrier for services in switching cars from its mill to the carrier's main line and in weighing them

is a question within the jurisdiction of the ·Commission, and on which its determination is conclusive, unless set aside on direct attack.

2. **Commerce** ☞88—**Commission's dismissal of shipper's application for switching charges precludes suit for charges.**

The dismissal by the Interstate Commerce Commission of an application by a shipper against a carrier for allowances for switching and weighing services performed by the shipper involves a finding by the Commission that the shipper was not entitled to the charges fixed by an agreement with the carrier, if that agreement was still in effect, and precludes a subsequent suit by the shipper to recover from the carrier the agreed charges or a reasonable charge.

3. **Commerce** ☞91—**Commission's order cannot be set aside in suit to recover charges disallowed by Commission.**

A suit by a shipper against a carrier to recover charges for switching and weighing services performed by the shipper, which charges had previously been disallowed by the Interstate Commerce Commission, is not one in which an order of the Commission can be set aside, in view of Comp. St. §§ 992, 994.

Appeal from the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Suit by the Finkbine Lumber Company against the Gulf & Ship Island Railroad Company to recover from the Railroad Company the agreed or reasonable charges for switching services rendered by the Lumber Company. From a decree dismissing the bill, complainant appeals. Affirmed.

W. A. White, of Gulfport, Miss. (E. J. Ford, of Pascogoula, Miss., and W. H. White, of Gulfport, Miss., on the brief), for appellant.

B. E. Eaton, of Gulfport, Miss., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. Prior to February, 1906, the appellant, Finkbine Lumber Company, had built a large sawmill for the manufacture of lumber, situated about 6,500 feet from the line of the appellee, Gulf & Ship Island Railroad Company, at its station in the town of Wiggins, in Harrison county, Miss., and had built, according to plans and specifications furnished by the appellee, a spur track or siding connecting its mill plant with appellee's tracks at the station in Wiggins. On February 15, 1906, the appellee in writing agreed to pay the appellant $5 per loaded car for the service rendered by the latter in moving or switching cars between the sawmill and the appellee's line, and in having the required weighing done. The appellee made payments according to the terms of that agreement, until it stopped doing so in pursuance of the statement contained in the following letter of its president:

"Gulfport, Miss., 8/23/06.

"Finkbine Lumber Company, Wiggins, Miss.—Gentlemen: Under the construction placed upon the Interstate Commerce Act by the general counsel of all the railroad companies, and especially by our general counsel, I write to say to you that the agreement made and entered into by and between the Gulf & Ship Island Railroad Company and the Finkbine Lumber Company, on the 15th day of February, 1906, with reference to switching cars, will have to be annulled and for naught held on and after the 27th day of August,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1906. The construction placed upon the Interstate Commerce Act by our general counsel leaves no other avenue open except to close out this agreement heretofore had between us. Of course, some other arrangement with reference to switching will have to be made.

"Very truly yours, [Signed] J. T. Jones, President."

So far as the record discloses, after August 27, 1906, the appellee did nothing indicating its recognition of the continued existence of a contract obligation on its part to pay to the appellant $5 per loaded car, or any other sum, for the above-mentioned services, which the appellant continued to perform. In pursuance of a petition filed by the appellee on September 11, 1916, the Interstate Commerce Commission, on December 6, 1916, approved an allowance by the appellee to the appellant of $2.50 per car for switching lumber from appellant's mill to the junction at Wiggins, such allowance to apply on lumber switched from and after September 11, 1916, the date of appellee's application. The appellee paid the allowance authorized by the just-mentioned order from September 11, 1916, until December 28, 1917, the date of the taking over of its railroad by the government, under the proclamation of the President. In 1917 the appellant filed with the Interstate Commerce Commission a petition, which, after alleging, among other things, the making of the above-mentioned agreement of February 15, 1906, the discontinuance of payments thereunder as above stated, and the appellant's continued performance of the switching and weighing services, prayed that an order be made commanding and requiring the appellee to pay to the appellant for those services, by way of reparation, such reasonable sum per car as may be fixed by the Commission as proper compensation therefor. The appellee resisted that application. After hearing and investigation the Commission dismissed the petition on February 9, 1918. The pending suit was brought on October 3, 1918. It was disclosed by the bill as amended that the above-mentioned agreement of February 15, 1906, was what was relied on as entitling the appellant to the relief sought. The appellant asserted the right to be paid $5 per car, "or such sum not less than $2.50 as the defendant [the appellee] should lawfully be required to pay," for each loaded car switched since the date of that agreement, for which payment has not been made, together with interest. The appeal is from a decree dismissing the amended bill.

In view of the facts and circumstances disclosed, it well might be inferred that the appellant assented to the statement in the letter of appellee's president of August 23, 1906, that the agreement of February 15, 1906, "will have to be annulled and held for naught on and after the 27th day of August, 1906," and that thereby a rescission or abandonment of that agreement was effected. 6 Ruling Case Law, 620. Its conduct indicated acquiescence. For more than 10 years following the date of that letter it rendered the services the agreement referred to without asserting any claim that it was entitled to be paid the price therefor stated in the agreement. For the switching and weighing done by it between September 11, 1916, and December 28, 1917, it accepted $2.50 per loaded car, without claiming that what it so received was less than it was entitled to. Its conduct cannot well be said to have been

consistent with the continued existence of the agreement now pleaded and relied on.

[1] Amended section 15 of the Interstate Commerce Act contains the following provision:

· "If the owner of property transported under this act directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the Commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the use of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section." U. S. Compiled Statutes Annotated, § 8583.

As the switching and weighing services rendered by the appellant included things the appellee, the carrier, would have had to do itself, as incidents of the transportation, if they had not been done by the shipper, it does not seem to be fairly open to dispute that those services, in part, at least, were such as were within the meaning of the words of the provision, "any service connected with such transportation." We understand it to be settled that an effect of the provision is to make charges for such services subject to the Commission; its determination of the maximum that may be allowed being conclusive unless set aside on direct attack. O'Keefe v. United States, 240 U. S. 294, 301, 302, 36 Sup. Ct. 313, 60 L. Ed. 651; Mitchell Coal Co. v. Penna. R. R. Co., 230 U. S. 247, 263, 264, 33 Sup. Ct. 916, 57 L. Ed. 1472; Ellis v. Int. Com. Comn., 237 U. S. 434, 445, 446, 35 Sup. Ct. 645, 59 L. Ed. 1036; Manufacturers' Ry. Co. v. United States, 246 U. S. 457, 479, 480, 38 Sup. Ct. 383, 62 L. Ed. 831.

It well may be inferred that agreements between carriers and shippers in reference to the former paying the latter for such services were made subject to review by the Commission because of the obvious fact that such agreements may be used as means of giving rebates, or of effecting other undue or unreasonable preferences, advantages, or discriminations. The allegations in the appellant's application to the Commission in 1917 as to the above-mentioned agreement of February 15, 1906, were in reference to a matter proper to be considered by the Commission in passing on that application, as that agreement, if it then was in existence, was subject to be reviewed by the Commission. Ellis v. Int. Com. Comn., supra; Manufacturers' Ry. Co. v. United States, supra.

[2] We are of opinion that the action of the Commission in dismissing that application amounted to a ruling against the asserted right of the appellant to be compensated by the appellee for the services in question. It is to be supposed that the Commission considered all the facts disclosed, including the agreement, if it was regarded as still in existence, and concluded that under all the circumstances appellant was not entitled to favorable action on its application. The relief sought in this case could not be granted, without denying effect to the action of the Commission in respect of a matter within its jurisdiction. The legislative purpose in empowering the Commission to pass on

charges and allowances for services of a shipper, or for his furnishing instrumentalities used in connection with transportation, including a review of agreements on those subjects, and to determine what, if any, allowance might be made therefor, would be defeated by recognizing a right of the courts to enforce such agreements, notwithstanding unfavorable action thereon by the Commission.

[3] This suit is not one in which an order of the Interstate Commerce Commission can be set aside. U. S. Compiled Statutes 1918, §§ 992, 994.

In argument the decree appealed from was sought to be supported on grounds in addition to those above mentioned, including the failure of any filed tariff to disclose the existence of such agreement, laches, and the statute of limitations. It is not deemed necessary to consider such other grounds. For reasons above indicated, the conclusion is that in dismissing the bill the court did not err.

The decree is affirmed.