## FULTON BAG & COTTON MILLS v. AMERICAN RY. EXPRESS CO.

### SAME v. DAVIS, Director General.

(District Court, N. D. Texas, at Dallas. May 11, 1923.)

Nos. 3036, 3037.

1. Commerce ⬉89—Recovery for hauling by shipper of his goods to express company's office where company failed to call for them, must be first sought from Commission.

Under Interstate Commerce Act, § 15 (8), as amended (Comp. St. § 8583), authorizing the Commission to determine a reasonable charge to be paid by a carrier for services rendered by the shipper, the determination of what is a reasonable allowance to a shipper, who was required to haul his goods to the express company's office after the express company failed to call for them and pick them up, as it was required to do under its tariffs on file, is a question which must be first submitted to the Commission, since to permit the shipper and the carrier to agree on the amount paid for such services would open the door to rebating, and the court will not require the carrier to do what it cannot voluntarily do.

2. Commerce ⬉89—Option to sue for damages is limited by other provisions giving Commission jurisdiction.

The provision of Interstate Commerce Act, § 9 (Comp. St. § 8573), giving an option of going before the Commission or the courts to recover damages occasioned by a violation of the statute, does not give the option to sue in court, contrary to another provision of the act, denying a right to recover in court for the same cause.

At Law. Separate actions by the Fulton Bag & Cotton Mills against the American Railway Express Company and against James C. Davis, Director General. Defendant's exceptions sustained, and petitions dismissed.

S. M. Leftwich and Etheridge, McCormick & Bromberg, all of Dallas, Tex., for plaintiff.

Smith, Robertson & Robertson, of Dallas, Tex., for defendants.

ATWELL, District Judge. The plaintiff alleges: That the defendant is a common carrier and is bound by law to receive and transport goods, wares, and merchandise by express, charging for such services the rates fixed by law. That such transportation and service include what is known as "pick-up service"; that is to say, the service of calling at the place of business of the shipper for such goods and carrying the same to its office for further transportation. That the plaintiff was engaged in the manufacturing business, and was called upon to ship large quantities of merchandise, and that during the period mentioned in its petition it did in fact ship 350,000 pounds of such merchandise. That it was necessary to make such shipments by express, and that it demanded from time to time, during the period mentioned in the petition, that the defendant call for and "pick up" and transport to its warehouse and terminals and offices and for further transportation, by express, said merchandise. That the plaintiff packed its mechandise in proper packages, ready for such shipment and placed them on its wharf, where the defendant was

in the habit of calling for the same. That during the morning hours of the day on which it desired a shipment to go out, and always several hours before, it would call the defendant by telephone and notify it that such packages would be ready for shipment, and request the defendant to call for the same. That the plaintiff's place of business was on the line and on the route of the defendant's daily calls for packages, and that the last call was supposed to be made, usually, about 4:30 or 5 o'clock in the afternoon, and that a reasonable time for the defendant to call and make the "pick-up" would be during the day on which it was notified of the plaintiff's desire to make such shipments. That when the plaintiff notified the defendant that such goods were ready the defendant would promise to call for the same. That the plaintiff would wait until about 5 o'clock, or until after the usual time for calling for the same, but, finding that the defendant, though it had promised to call, had not done so, the plaintiff would thereupon, in order to get the shipment to the office of the defendant in time to go out on the customary trains, transport, at its own cost, the said goods from its place of business to the office of the defendant. That the defendant, though in duty bound to call for said goods when so notified, would and did fail and refuse daily to call for such shipments, and thus forced the plaintiff to procure other means of transportation to the express office of the defendant. That sometimes the defendant would state that it was rushed in its business, and did not know whether it could make the "pick-up" or not, but that it would try to do so, but that it would fail, and the plaintiff would be compelled to deliver the same. "That during the period aforesaid, though the plaintiff was situated on the defendant's daily route, and though plaintiff placed its packages to be picked up on its shipping platform, where the defendant was supposed to pick up its packages, and though the defendant customarily should have made these calls on this route and call on the plaintiff, the defendant wholly failed and refused to call by the plaintiff's place of business and make the pick-up aforesaid, and that in each and all of the instances aforesaid the defendant was forced to and did procure other means of transportation to the offices of the defendant at plaintiff's own cost, and that this transportation which the plaintiff was forced to pay for amounted to 14 cents per cwt. on each and all of the aforesaid shipments, which totaled the sum of 350,000 pounds, or 3,500 cwt. That the defendant, though required by law and its promises to render this plaintiff the aforesaid pick-up service, and though charging the full rate prescribed in its tariff which includes pick-up service, yet wholly failed and refused to render said service to the plaintiff. That said defendant, though admitting its duty and accepting the rate fixed therefor, has failed and refused to extend to plaintiff said service, and plaintiff has been compelled at a cost of 14 cents per cwt., which was a reasonable charge therefor, to otherwise secure the said transportation and delivery known as and hereinabove referred to as "pick-up service," all to plaintiff's great damage in the sum of $750, whereby the said defendant promised and became liable to pay to plaintiff said sum."

By way of exception the defendant challenges the jurisdiction of the court to adjudicate the questions presented by the plaintiff, because it claims that they (a) affect the reasonableness of rates and the reasonableness of a practice in interstate commerce, which are administrative questions, confided primarily to the Interstate Commerce Commission, there being no allegation in the plaintiff's petition that the Interstate Commerce Commission had prescribed any rule, rate or practice which would regulate, control, or govern the rights and obligations of the plaintiff and defendant in the matters complained of by the plaintiff; (b) that the matters complained of in the plaintiff's petition essentially involve the making of a rate, and that this court has no such power; (c) that the court is asked to determine what the rate would be on plaintiff's shipments from depot station to depot station, when the terminals of the defendant have been enlarged by "pick-up" limits to include the plaintiff's place of business, and the Commission has prescribed the rates that are to be charged by the defendant, and that such rates shall include the "pick-up" and the transportation; (d) that to compensate the plaintiff for the expense of his cartage would be tantamount to giving him a rebate; that recovery by the plaintiff in this cause would be to fix a new rate, which would be less than that prescribed by the Interstate Commerce Commission for other shipments; that the defendant could not make any adjustment with the plaintiff for the charges made by the plaintiff without exposing itself to prosecution for a violation of the federal laws against undue preference and unjust discrimination, and what the defendant could not lawfully and voluntarily do this court is without jurisdiction to compel it to do, or to give damages against it for its failure to do; that the plaintiff does not allege that the rate prescribed by law, which includes "pick-up" and transportation and delivery, allows of any separation for such services or for the charges for the service of drayage from plaintiff's place of business to the defendant's Dallas depot; that the Interstate Commerce Commission has made no rules or rates covering "pick-up" practice, or the failure of the defendant to render such service to the shipper, and has made no division of rates so that this court would have jurisdiction.

[1] The question presented is quite difficult of solution, because of the hairlike distinction between an action for damages, which is cognizable in this forum, and the making of a rate for a service performed, or the granting of relief which would be, in effect, a declaration as to what would be reasonable for a given service, or as to what is or would be a reasonable practice. The mind hesitates when it is called upon to determine whether a compensation for a failure to perform a duty by a carrier is, under the legislation now being scrutinized, recoverable in court, because "damages," or is nonrecoverable in court until the national rate-making body has first acted thereon.

It will be noted that the shipper performed for himself a service that the carrier was bound by law to perform, and that the shipper paid to the carrier the rate which entitled it to the service from the carrier which it performed itself. In other words, the defendant was bound to call for the merchandise at the defendant's factory and trans-

·port it to its terminal for continued shipment on its journey to the destination, but that, instead of doing so, it ignored the calls of the plaintiff, and the plaintiff was compelled, in order to keep its contract with its customers, to transport the merchandise from its factory to the defendant's depot, and to pay for such initial transportation, so that the packages would be on hand for the remainder of the journey to their destination. Amended section 15 (8) of the Interstate Commerce Act contains the following provision:

"If the owner of property transported under this act directly or indirectly renders any service connected with such transportation, or furnishes any in-.stumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the Commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the use of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section." U. S. ·Compiled ·Statutes Annotated, § 8583.

As the delivery services rendered by the plaintiff included the very things that the defendant, the carrier, would have had to do for itself, as an incident of the transportation, if they had not been done by the shipper, it does not seem ·to be fairly open to dispute that those services, in part, at least, were such as are within the meaning of the words of the provision, "any service connected with such transporta-·tion." It would seem that the effect of the provision is to make the charge for such service subject to the Commission. O'Keefe v. U. S. .240 U. S. 294, 36 Sup. Ct. 313, 60 L. Ed. 651; Mitchell Coal Co. v. Pennsylvania Railroad Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472; Ellis v. I. C. C., 237 U. S. 434, 35 Sup. Ct. 645, 59 L. Ed. 1036; Manufacturers' Railway Co. v. U. S., 246 U. S. 457, 38 Sup. Ct. 383, 62 L. Ed. 831; Finkbine Lumber Co. v. Gulf Railway Co. (C. C. A.) 269 Fed. 933.

Circuit Judge Walker, in the last above cited case, said:

"It well may be inferred that agreements between carriers and shippers in reference to the former paying the latter for such services were made subject to review by the Commission because of the obvious fact that such agreements may be used as means of giving rebates, or of effecting other undue or unreasonable preferences, advantages, or discriminations."

A careful reading of the Finkbine Case, supra, leaves me slightly doubtful as to the real reason for the holding, but I am of the opinion that the fact that the Commission had theretofore denied the plaintiff the relief that he was then seeking in court entered largely into the minds of the court. However, the opinion does serve to bring pres-·ently to notice the pertinency of that portion of section 15 which is quoted above. If the Interstate Commerce Commission had denied the plaintiff in this case the relief which it is now seeking here, then the Finkbine Case would be precisely in point.

In Loomis v. Lehigh Valley Railroad Co., 240 U. S. 43, 36 Sup. Ct. 228, 60 L. Ed. 517, the plaintiff claimed for expenditures made by him for fitting and making suitable cars that the carrier had furnished to him for the transportation of his freight; such amount was demanded

by the shipper of the railway company which demand was refused and without preliminary resort to the Interstate Commerce Commission the shipper brought his action for the recovery of the amount expended by him upon the theory that as the carrier had failed to perform its common-law duty to furnish adequate cars he was entitled to recover as damages his consequent outlay. The jurisdiction of the state court was challenged on practically the same grounds that this court's jurisdiction is now challenged. The Supreme Court said:

"No serious dispute exists concerning the facts. The applicable duly filed interstate rate schedules made no reference to allowances for grain doors or bulkheads, and the circumstances under which these were installed, together with their cost, are not controverted. Whether there was jurisdiction in the state court to pass upon the carrier's liability incident to the interstate traffic, is the sole point demanding consideration. The effect of the Act to Regulate Commerce, as supplemented and amended, upon the jurisdiction of courts, has been expounded in many cases heretofore decided. Tex. & Pac. Ry. v. Abilene Cotton Co., 204 U. S. 426; Balt. & Ohio R. R. v. Pitcairn Coal Co., 215 U. S. 481; Robinson v. Balt. & Ohio R. R., 222 U. S. 506; Mitchell Coal Co. v. Penna. R. R., 230 U. S. 247; Morrisdale Coal Co. v. Penna. R. R., 230 U. S. 304; Minnesota Rate Cases, 230 U. S. 352; Tex. & Pac. Ry. v. American Tire Co., 234 U. S. 138; Penna. R. R. v. Puritan Coal Co., 237 U. S. 121; Penna R. R. v. Clark Coal Co., 238 U. S. 456.

"Speaking through Mr. Justice Lamar in Mitchell Coal Co. v. Penna. R. R., supra, we said (page 255): 'The courts have not been given jurisdiction to fix rates or practices in direct proceedings, nor can they do so collaterally during the progress of a lawsuit when the action is based on the claim that unreasonable allowances have been paid. If the decision of such questions was committed to different courts with different juries the results would not only vary in degree, but might often be opposite in character—to the destruction of the uniformity in rate and practice which was the cardinal object of the statute.' In the Minnesota Rate Cases, supra, we further said (page 419): 'The dominating purpose of the statute was to secure conformity to the prescribed standards through the examination and appreciation of the complex facts of transportation by the body created for that purpose; and, as this court has repeatedly held, it would be destructive of the system of regulation defined by the statute if the court without the preliminary action of the Commission were to undertake to pass upon the administrative questions which the statute has primarily confided to it.' And in Tex. & Pac. Ry. Co. v. American Tire Co., supra, the rule was thus stated (page 146): 'It is equally clear that the controversy as to whether the lumber tariff included cross-ties was one primarily to be determined by the Commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the statute. Indeed, we think it is indisputable that that subject is directly controlled by the authorities which establish that for the preservation of the uniformity which it was the purpose of the Act to Regulate Commerce to secure, the courts may not as an original question exert authority over subjects which primarily come within the jurisdiction of the Commission.'

"An adequate consideration of the present controversy would require acquaintance with many intricate facts of transportation and a consequent appreciation of the practical effect of any attempt to define services covered by a carrier's published tariffs, or character of equipment which must provide, or allowances which it may make to shippers for instrumentalities supplied and services rendered. In the last analysis the instant cause presents a problem which directly concerns rate-making and is peculiarly administrative. Atchison, Topeka & Santa Fé Ry. v. United States, 232 U. S. 199, 220. And the preservation of uniformity and prevention of discrimination render essential some appropriate ruling by the Interstate Commerce Commission before it may be submitted to a court. See Penna. R. R. v. Puritan Coal Co., supra, pages 128, 129; Penna. R. R. v. Clark Coal Co., supra, pages 469, 470. If in

respect of interstate business the courts of New York may determine, as original matters, ratemaking problems, those in other states have like jurisdiction. The uncertainty and confusion which would necessarily result, is manifest. Ample authority has been given the commission, in circumstances like those here shown, to administer proper relief, and in connection therewith to approve some general rule of action. In so doing it would effectuate the great purpose for which the statute was enacted."

In Northern Pacific Railway Co. v. Solum, 247 U. S. 483, 38 Sup. Ct. 553, 62 L. Ed. 1221, the court said:

"The railway contends that, since the administrative question upon which its liability depends involves the reasonableness of a practice in interstate commerce, * * * the court had no jurisdiction to adjudicate the controversy until that administrative question had been determined by the Interstate Commerce Commission. The shipper, on the other hand, urges that the rule which requires such preliminary determination of administrative questions by the Commission applies only to those cases where the question involved is whether a particular rate is reasonable or whether a particular practice is discriminatory. But the rule is not so limited. It applies, likewise, to any practice of the carrier which gives rise to the application of a rate. Texas & Pacific Ry. Co. v. American Tie & Timber Company, 234 U. S. 138, 147; Pennsylvania R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 131; Pennsylvania R. R. Co. v. Clark Bros. Coal Mining Co., 238 U. S. 456, 469."

[2] It is true that section 9 of the act (Comp. St. § 8573) gives to plaintiff the option of going before the Commission or the courts for damages occasioned by a violation of the statute. The Supreme Court, in Mitchell Coal Co. v. Pennsylvania Railroad Co., 230 U. S. 257, 33 Sup. Ct. 921, 57 L. Ed. 1472, said:

"Since the Commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition to his right to succeed, produce an order from the Commission that the practice or the rate was thus unreasonable and therefore illegal and prohibited."

Of course, one cannot claim the right to come into court under the act and at the same time ignore a provision of the act which denies the right to recover in a court for the very thing for which he is seeking recovery. Without even intimating that there is or was any understanding between the plaintiff and the defendant that the plaintiff should perform the service that it did perform, yet to permit a recovery for it would open a door through which the carrier could prefer a shipper, or destroy a shipper, or give a rebate to a shipper or discriminate against a shipper. It would permit to be done the very thing that the Congress has been so properly solicitous to see should not be done. Manifestly the carrier in the present case would not be permitted to pay any sum, large or small, reasonable or unreasonable, to the shipper, for that portion of the haul that the shipper provided for. What the parties themselves could not do voluntarily—what they could not peaceably and nonlitigiously do—certainly this court would not compel nor order them to do. That voluntary act which would be unlawful may not be made lawful by the command of the law.

Counsel for the plaintiff present very ably the position that their suit here is one for damages, and is not one to make a rate, and in support of their contention cite a number of interesting cases wherein

recoveries have been allowed in the courts for failure to furnish cars and for the wrongful retention of cars, without first requiring an appeal to the Interstate Commerce Commission for an ascertainment of what amount would be reasonable, etc. Among such cases are the following: U. S. v. Pennsylvania, 242 U. S. 208, 37 Sup. Ct. 95, 61 L. Ed. 251; Pennsylvania v. Sonman Co., 242 U. S. 121, 37 Sup. Ct. 46, 61 L. Ed. 188; Illinois Central v. Mulberry Co., 238 U. S. 275, 35 Sup. Ct. 760, 59 L. Ed. 1306; Pennsylvania Railroad v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Mitchell Coal Co. v. Pennsylvania, 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472.

The question at issue, however, in my judgment, is not one that is governed by any rule of the Interstate Commerce Commission, but is in fact ruled by that part of section 15 of the act quoted above. In the cases wherein the Supreme Court has granted relief, or affirmed the granting of relief, to shippers without preliminary recourse to the Commission, there is no such fundamental inhibition in the way of a judicial granting of relief.

The plaintiff pleads that the amount it seeks to recover was a "reasonable charge," for the carriage service performed by it. It seems to me that the plaintiff should first present his claim to the Interstate Commerce Commission, and I therefore sustain the exceptions and dismiss the petition, and an order will be drawn accordingly.

The same order will be drawn in cause No. 3037, Fulton Bag & Cotton Mills v. James C. Davis, Director General, Agent.