# ELLIS *v.* INTERSTATE COMMERCE COMMISSION.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 712. Argued April 12, 15, 1915.—Decided May 10, 1915.

The definition of transportation in § 1 of the Act to Regulate Commerce includes the instrumentalities enumerated, but as a preliminary a requirement that the carriers shall furnish them upon reasonable request; the definition does not mean however that the owners and builders of such instrumentalities shall, contrary to truth, be regarded as carriers.

The control of the Interstate Commerce Commission over private cars and such instrumentalities of commerce is effected by its control over the carriers subject to the Act and not over the builders and owners of such instrumentalities who are not subject to the Act.

An appeal lies to this court from a final order of the District Court made upon petition of the Interstate Commerce Commission directing a witness to answer certain questions and produce certain documents. *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25; *Alexander* v. *United States,* 201 U. S. 117, distinguished.

The Interstate Commission may not in a mere fishing expedition interrogate a witness in regard to the affairs of a stranger on the chance that something discreditable may be disclosed.

An intervening corporation may be a means by which an owner of property transported incidentally renders services and if so its charges therefor are subject to the supervision of the Commission and, as unreasonable charges may be used as a device to obtain a forbidden end, the Commission should be allowed a reasonable latitude in interrogating a witness in a proper proceeding to ascertain if any such device is used. *Int. Com. Comm.* v. *Brinson,* 154 U. S. 447.

Every advantage which may enure to a shipper as the result of the position of his plant, his ownership or his wealth is not necessarily a preference within the prohibitions of the Act to Regulate Commerce.

In this case *held* that until the corporation, not a carrier, furnishing instrumentalities to shippers was shown to be a mere tool of the latter for obtaining preferences; a witness need not answer questions concerning private business of the corporation, but also *held* that he

should answer questions in regard to the furnishing of instrumentalities so far as they affected matters which under § 15 of the Act to Regulate Commerce are subject to the Commission.

THE facts, which involve the construction and application of § 12 of the act to regulate commerce and the power of the court to compel witnesses to answer questions propounded, and to produce documents demanded, by the Interstate Commerce Commission, are stated in the opinion.

*Mr. Frank B. Kellogg,* with whom *Mr. C. A. Severance, Mr. Robert E. Olds, Mr. Alfred R. Urion* and *Mr. Charles J. Faulkner* were on the brief, for appellant:

Armour Car Lines is not a common carrier, nor is it engaged in transportation, within the meaning of the act to regulate commerce.

The demands of the Commission involved an unwarranted extension of its inquisitorial powers and constitute an unlawful invasion of the private rights and affairs of the respondent and of the company he represents.

The demands involved in this proceeding do not fall within the scope of the Commission's orders.

In support of appellant's contention, see *Baird Case,* 194 U. S. 25; *Balt. & Ohio S. W. Ry.* v. *Voigt,* 176 U. S. 498; *Boyd* v. *United States,* 116 S. W. Rep. 616; *Cattle Raisers' Assn.* v. *Fort Worth Ry.,* 7 I. C. C. 513; *Consolidated Forwarding Co.* v. *Southern Pac.,* 9 I. C. C. 182, 206; *Cotting* v. *Kansas City Stockyards,* 183 U. S. 95; *Employers' Liability Cases,* 207 U. S. 463; *Enterprise Transp. Co.* v. *Penna. R. R.,* 121 I. C. C. 236; *Ex parte Koehler,* 36 Fed. Rep. 867; *Gracie* v. *Palmer,* 8 Wheat. 605; *Harriman* v. *Int. Com. Comm.,* 211 U. S. 407; *Hirsch* v. *New England Nav. Co.,* 113 N. Y. Supp. 395; *Hopkins* v. *United States,* 171 U. S. 578; *Int. Com. Comm.* v. *Brimson,* 154 U. S. 447, 448; *Int. Com. Comm.* v. *Railway Co.,* 167 U. S. 506; *Int. Com. Comm.* v. *Reichmann,* 145

Fed. Rep. 235; *Kentucky Bridge Co.* v. *Louis. & Nash. R. R.*, 37 Fed. Rep. 573; *Kilbourn* v. *Thompson*, 103 U. S. 168; *Lemon* v. *Pullman Co.*, 52 Fed. Rep. 262; *Long* v. *Lehigh Valley R. R.*, 130 Fed. Rep. 870; *Nor. Pac. Ry.* v. *Adams*, 192 U. S. 440; *Omaha Street Ry.* v. *Int. Com.·Comm.*, 230 U. S. 324; *Pacific Ry. Comm. Case*, 32 Fed. Rep. 241; *Parmelee Transfer Co.*, 12 I. C. C. 40; *Parmelee* v. *Lowitz*, 74 Illinois, 116; *Parmelee* v. *McNulty*, 19 Illinois, 556; *Pullman Co.* v. *Linke*, 203 Fed. Rep. 1017; *State* v. *Union Stockyards Co.*, 115 N. W. Rep. 627, 631; *Santa Fe* v. *Grant Bros.*, 228 U. S. 177; *San Diego* v. *National City*, 174 U. S. 757; *Smyth* v. *Ames*, 169 U. S. 546; *Southern Pacific Terminal Co.* v. *Int. Com. Comm.*, 219 U. S. 498; *Tap Line Cases*, 234 U. S. 1; *Tex. Pac. Ry.* v. *Abilene Cotton Co.*, 204 U. S. 438; *United States* v. *Louis. & Nash. R. R.*, 234 U. S. 314; *United States* v. *Mil. Refrigerator Transit Co.*, 145 Fed. Rep. 1007; *United States* v. *Union Stockyards*, 226 U. S. 286; *Union Stockyards* v. *United States*, 169 Fed. Rep. 404.

Armour Car Lines is not a common carrier subject to the act to regulate commerce.

The demands of the Commission amount to an unlawful invasion of the private rights and affairs of the appellant and of the company he represents.

The question is one of power, not of relevancy of evidence. The evidence demanded is not relevant to any legitimate inquiry the Commission may undertake. The Act to Regulate Commerce nowhere provides that railroads shall only pay reasonable compensation for cars, materials, labor, etc. The Government's suggestion of possible rebates is not justified. *Brimson Case*, 154 U. S. 447; *Gracie* v. *Palmer*, 8 Wheat. 605; *Harriman Case*, 211 U. S. 407; *Louis. & Nash. Case*, 236 U. S. 318; *Pacific Railway Commission Case*, 32 Fed. Rep. 241; *Union Stockyards Co.* v. *United States*, 169 Fed. Rep. 404; *S. C.*, 226 U. S. 286; 40 Cong. Rec., pt. 2, pp. 1828, 1843–4, 1910, 1997,

2004; 40 Cong. Rec., pt. 3, pp. 2020–1; 40 Cong. Rec., pt. 7, p. 6438.

*Mr. E. W. Hines,* with whom *Mr. Joseph W. Folk* was on the brief, for appellees:

The order of the District Court requiring Ellis to testify in the proceeding before the Commission is not appealable. *Brimson, Baird,* and *Harriman Cases* distinguished. Final decrees only are appealable. An order requiring the production of testimony is not a final decree. *Alexander* v. *United States,* 201 U. S. 117; *Webster Coal Co.* v. *Cassatt,* 207 U. S. 181; *Wise* v. *Mills,* 220 U. S. 549; *Haight* v. *Robinson,* 203 U. S. 581; *Hultberg* v. *Anderson,* 214 Fed. Rep. 349; *Logan* v. *Penna. R. R.,* 19 Atl. Rep. 13. Greater rights should not be given a witness to justify his contumacy when summoned before an examiner than when summoned before a court. *Alexander* v. *United States,* 201 U. S. 117.

The orders of the Commission on which the investigation was based were sufficient to authorize the Commission to inquire whether or not Armour Car Lines was being used as a device to procure favors for Armour & Co. from the railroads.

The purpose of the hearing at which appellant refused to testify, as indicated in the Commission's order providing therefor, was to determine whether or not the allowances paid by carriers for the use of private cars and the practices governing the handling and icing of such cars were unjust, unreasonable, unduly discriminatory, or otherwise in violation of the act. The interest of Armour & Co., and of other shippers, in the car lines furnishing such facilities was of the essence of the inquiry.

Investigations on the part of the Commission should not be hampered by the technical rules of the common law. *Int. Com. Comm.* v. *Baird,* 194 U. S. 25, 44. As to

questions in issue Armour Car Lines was not taken by surprise.

The investigation in which appellant was called as a witness related to specific matters which might be made the object of a formal complaint, and was therefore one in which witnesses could be required to testify.

See §§ 1, 2, 12, 13, and 15 of the Act to Regulate Commerce and §§ 1 and 2 of the Elkins Act.

The Elkins Act authorized inclusion as parties, "in addition to the carrier, all persons interested in or affected by the rate, regulation, or practice under consideration." Armour Car Lines and Armour & Co. were served with copies of the Commission's orders and were made formal parties to the investigation in which appellant refused to testify.

One purpose of the inquiry was to determine whether or not the practices under investigation were resulting in unlawful discrimination. *Harriman* v. *Int. Com. Comm.*, 211 U. S. 407, distinguished.

The information which the witness was asked to give was relevant to the inquiry which the Commission was making.

The questions in issue were material as tending to show the relation between Armour & Co., the shipper, and Armour Car Lines, the corporation furnishing transportation and refrigeration facilities to common carriers; also as tending to show a practice of rebating under the guise of allowances from common carriers to Armour & Co. through the instrumentality of Armour Car Lines.

*Cotting* v. *Stock Yards Co.*, 183 U. S. 79, illustrative rather than exclusive of this proposition.

If the questions had a legitimate bearing upon the identity of Armour & Co. and Armour Car Lines, answers thereto were properly to have been compelled. *Int. Com. Comm.* v. *Baird*, 194 U. S. 25, 47; *Nelson* v. *United States*, 201 U. S. 92.

It is not contended that a corporation selling supplies to a railroad common carrier thereby subjects itself to the jurisdiction of the Commission. The contention is that a shipper may, through a corporation furnishing transportation facilities to such a common carrier, obtain rebates or concessions in the guise of allowances therefor, and that the Commission has jurisdiction to investigate the relations between such shipper and the corporation furnishing such facilities, in order to determine whether or not the latter is being used as a device to conceal rebates.

The questions asked were material as tending to advise the Commission as to the reasonableness of the allowances paid by common carriers for the services rendered by Armour Car Lines. It is the duty of the Commission to abate discriminative practices, "whatever form they may take and in whatsoever guise they may appear." *Tap Line Cases*, 234 U. S. 1.

The power of the Commission to inquire into the allowances of a tap line is based not upon the fact that the tap line is a common carrier, but upon the fact that it is owned by a shipper. A shipper owning a tap line is subject to the jurisdiction of the Commission with respect to the relations between the tap line, the shipper, and railroad common carriers. It is the duty of the Commission to inquire fully into such relations in order to determine whether or not the shipper by means of the tap line is securing concessions from the published rates. *Tap Line Cases*, 234 U. S. 1.

The Elkins Act was designed to place all shippers upon equal terms. *United States* v. *Union Stock Yards*, 226 U. S. 286; *Int. Com. Comm.* v. *Reichmann*, 145 Fed. Rep. 235.

A witness, not a party to the proceeding, may not question on behalf of the corporation, a party thereto, the materiality of evidence. *Nelson* v. *United States*, 201 U. S. 92.

The witnesses who may be compelled by the courts to give testimony before the Commission and to produce documents, books, and papers are not limited to officers and agents of common carriers.

The Commission may require any person to testify before it if the testimony required relates to a matter under investigation, if such matter is one which the Commission is legally entitled to make, and if the witness is not excused on some personal ground from compliance with the Commission's order to testify. *Int. Com. Comm.* v. *Brimson,* 154 U. S. 447.

Congress, in excluding private car lines from the operation of the statute, was endeavoring to conserve the interests, not of private car lines, but of shippers. Clearly it did not intend thereby to deny to the Commission the power to require such corporations to disclose any information which might be necessary to enable the Commission to enforce the provisions of the act.

Jurisdiction over interstate transportation gives to the Commission jurisdiction over any person furnishing any part of that transportation, as to the transportation so furnished, whether or not such person is a common carrier.

To require Armour Car Lines, or its officer, to state what its books show, as to the result of its operations relating to its business of renting and leasing cars and furnishing refrigeration and icing service, would not unnecessarily invade the privacy of that corporation.

Congress has the same authority to require Armour Car Lines to furnish to the Commission any information which may be necessary to enable it to determine whether or not the act is being violated as it would have if that corporation had been created by an act of Congress. *Hale* v. *Henkel,* 201 U. S. 43; *Int. Com. Comm.* v. *Goodrich Transit Co.,* 224 U. S. 194. *United States* v. *Louis. & Nash. R. R.,* 236 U. S. 318, distinguished.

The services furnished by car lines are furnished by them either as agents for the carriers or as agents for the shippers, and the Commission may investigate the charges for and the practices relating to such services as if such services were furnished directly by the carriers or the shippers.

The act requires common carriers to furnish everything defined therein as transportation. A shipper may furnish on behalf of a carrier certain facilities required to be furnished, receiving therefor a reasonable allowance. Any person who performs such a service thereby subjects himself to the jurisdiction of the Commission to the extent necessary to enable the Commission to determine what is a reasonable allowance for the service so rendered.

Armour Car Lines furnish a transportation service which it is the duty of common carriers to provide, and must be regarded as performing that service on behalf of such carriers within the purview of § 1 of the Elkins Act. The jurisdiction of the Commission therefore, for the purposes of this case, extends to Armour Car Lines as fully as if it were a common carrier subject to the act.

The questions propounded to, and which appellant declined to answer and which he was required by the order of the District Court to answer, were material to issues cognizable by the Commission. Answers to such questions, if furnished, might have disclosed a violation of the act to regulate commerce or of the Elkins Act. Appellant not being a party to the proceeding before the Commission, could not properly refuse to answer on the ground of personal privilege, nor could he plead the privilege of the corporation. Armour Car Lines, for the purposes of this proceeding, was as clearly amenable to the inquisitorial jurisdiction of the Commission as if it were a common carrier subject to the act. A reversal by this court of the judgment of the District Court would go far towards defeating the purposes for which the Commission was

created. Wherefore it is respectfully submitted that the order of the District Court requiring appellant to testify and to produce the documents in issue should be sustained.

In support of these contentions see cases *supra*, and also *Brown* v. *Walker*, 161 U. S. 591; *Canada Southern Ry.* v. *International Bridge Co.*, 8 App. Cases, 723; *Consol. Rendering Co.* v. *Vermont*, 207 U. S. 541; *Counselman* v. *Hitchcock*, 142 U. S. 547; *Gibbons* v. *Ogden*, 9 Wheaton, 1; *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322; *New York &c. R. M. Co.* v. *Int. Com. Comm.*, 26 Sup. Ct. 272; *Nor. Pac. Ry.* v. *North Dakota*, 236 U. S. 585; *United States* v. *Milwaukee Refrigerator Co.*, 145 Fed. Rep. 1007.

*Mr. Assistant Attorney General Underwood* for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from an order of the District Court made upon a petition of the appellee, the Interstate Commerce Commission, filed under the act to regulate commerce, § 12, c. 104, 24 Stat. 379, 383. The order directs the appellant to answer certain questions propounded and to produce certain documents called for by the appellee. There is no doubt that this appeal lies. The order is not like one made to a witness before an examiner or on the stand in the course of a proceeding *inter alios* in court. *Alexander* v. *United States*, 201 U. S. 117. It is the end of a proceeding begun against the witness. *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25. Therefore, we pass at once to the statement of the case.

The Interstate Commerce Commission, reciting that it appeared from complaint on file that the allowances paid for the use of private cars, the practices governing the handling and icing of such cars, and the minimum carload weights applicable to the commodities shipped

therein, on the part of carriers subject to the act to regulate commerce, violated that act in various ways, ordered that a proceeding of investigation be instituted by the Commission of its own motion to determine whether such allowances, practices, or minimum carload weights were in violation of the act as alleged, with a view to issuing such orders as might be necessary to correct discriminations and make applicable reasonable weights. It ordered that carriers by railroad subject to the act be made parties respondent, and, later, that all persons and corporations owning or operating cars and other vehicles and instrumentalities and facilities of shipment or carriage of property in interstate commerce be made parties also. In the proceedings thus ordered the questions propounded were put to the appellant, the vice president and general manager of the Armour Car Lines.

The Armour Car Lines is a New Jersey corporation that owns, manufactures and maintains refrigerator, tank and box cars, and that lets these cars to the railroad or to shippers. It also owns and operates icing stations on various lines of railway, and from these ices and re-ices the cars, when set by the railroads at the icing plant, by filling the bunkers from the top, after which the railroads remove the cars. The railroads pay a certain rate per ton, and charge the shipper according to tariffs on file with the Commission. Finally it furnishes cars for the shipment of perishable fruits, &c., and keeps them iced, the railroads paying for the same. It has no control over motive power or over the movement of the cars that it furnishes as above, and in short, notwithstanding some argument to the contrary, is not a common carrier subject to the act. It is true that the definition of transportation in § 1 of the act includes such instrumentalities as the Armour Car Lines lets to the railroads. But the definition is a preliminary to a requirement that the carriers shall furnish them upon reasonable request,

not that the owners and builders shall be regarded as carriers, contrary to the truth. The control of the Commission over private cars, &c., is to be effected by its control over the railroads that are subject to the act. The railroads may be made answerable for what they hire from the Armour Car Lines, if they would not be otherwise, but that does not affect the nature of the Armour Car Lines itself. The petition of the Interstate Commerce Commission to compel an answer to its questions hardly goes on any such ground.

The ground of the petition is that it became the duty of the Commission to ascertain whether Armour & Company, an Illinois corporation shipping packing-house products in commerce among the States, was controlling Armour Car Lines and using it as a device to obtain concessions from the published rates of transportation, and whether Armour Car Lines was receiving for its refrigerating services unreasonable compensation that enured to the benefit of Armour & Co., all in violation of §§ 1, 2, 3, and 15 of the act.

If the price paid to the Armour Car Lines was made the cover for a rebate to Armour & Co., or if better cars were given to Armour & Co. than to others, or if, in short, the act was violated, the railroads are responsible on proof of the fact. But the only relation that is subject to the Commission is that between the railroads and the shippers. It does not matter to the responsibility of the roads whether they own or simply control the facilities, or whether they pay a greater or less price to their lessor. It was argued that the Commission might look into the profits and losses of the Armour Car Lines (one of the matters inquired about), in order to avoid fixing allowances to it at a confiscatory rate. But the Commission fixes nothing as to the Armour Car Lines except under § 15 in the event of which we shall speak.

The appellant's refusal to answer the series of questions

put was not based upon any objection to giving much of the information sought, but on the ground that the counsel who put them avowed that they were the beginning of an attempt to go into the whole business of the Armour Car Lines—a fishing expedition into the affairs of a stranger for the chance that something discreditable might turn up. This was beyond the powers of the Commission. *In re Pacific Railway Commission,* 32 Fed. Rep. 241. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 478, 479. *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407. The Armour Car Lines not being subject to regulation by the Commission its position was simply that of a witness interested in but a stranger to the inquiry; and the Commission could not enlarge its powers by making the Company a party to the proceedings and serving it with notice. Therefore the matter to be considered here, subject to the qualification that we are about to state, is how far an ordinary witness could be required to answer the questions that are before the court.

We have stated the nature and object of the investigation, and it is to be observed that not every advantage that may enure to a shipper as the result of the position of his plant, his ownership or his wealth is a preference. *Interstate Commerce Commission* v. *Diffenbaugh,* 222 U. S. 42, 46. But the intervening corporation may be a means by which an owner of property transported indirectly renders the services in question, and in that event its charges are subject to the Commission by § 15. The supposed unreasonable charge may be used as a device to attain the forbidden end and therefore reasonable latitude should be allowed to see if any such device is used. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 464. But still until Armour Car Lines is shown to be merely the tool of Armour & Company it has the general immunities that we have stated. With the

foregoing general principles in view we proceed to dispose of the questions asked.

It is not necessary to repeat the many pages of questions at length. They are grouped by the Government into classes and numbered so that the result may be stated in comparatively few words. The first group concerning interlocking officers and relations between Armour Car Lines, Armour & Company and Fowler Packing Company, questions 1, 2, 3 and 7, should be answered. The only objection was on account of the general intent avowed as we have stated. So also questions 4, 5, 6, concerning the acquirement of cars previously owned by Armour and Company and Armour Packing Co., making the second group. Also questions 8, 9, 12 and 13, as to contracts of Armour Car Lines with Armour & Company and Colorado Packing Company for furnishing cars and icing service. The next group, so far as the questions concern the ownership, manufacture and repair of cars, Nos. 10, 11, 14, 16, 17 and 19, need not be answered, except 11 "where are the cars of Armour Car Lines repaired when not repaired in shops of railroads?" The last two groups concern matters into which the Commission was not authorized to inquire. The fifth, questions 15, 20, 21, 25, 26, 27, and 28, called for statements showing profit and loss, credits and debits to income &c., so far as the same related to transportation as defined in the act; and the sixth, Nos. 22, 23, and 24, for statements showing the amount invested in each icing plant and the detailed results of the operation of each, amount invested in each, cost per ton of ice at the source of supply &c., &c., all matters belonging to the private business of the Armour Car Lines and not open if our interpretation of the law is correct. Our decision, however, must be without prejudice to the possibility that the case may be brought within § 15 by evidence to the effect stated above.

*Decree reversed without prejudice.*

MR. JUSTICE DAY, while not differing from the general views taken by the court, is of opinion that the nature of the inquiry under § 15 made it proper that all the questions should be answered.

,MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.