In the Matter of **LETTERS ROGATORY ISSUED BY** the **DIRECTOR OF INSPECTION OF** the **GOVERNMENT OF INDIA** to take the Testimony of the President or Other Designated Representative of Messrs. **Brown Brothers, Harriman & Company** and the President or Other Designated Representative of **Chase Manhattan Bank.**

**No. 144, Docket 31603.**

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1967.

Decided Nov. 9, 1967.

Daniel F. Kolb, New York City (Davis, Polk, Wardwell, Sunderland & Kiendl, New York City) (Donald N. Dirks, Dennis H. Allee, New York City, of counsel), for appellant Brown Brothers, Harriman & Co.

Robert S. Ogden, Jr., New York City (Donovan, Leisure, Newton & Irvine, New York City) (Granville Whittlesey, Jr., New York City, of counsel), for appellant A. K. Jain.

Alvin R. Cowan, New York City (Abrams & Cowan, New York City), for appellee, Director of Inspection of the Government of India.

Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

This proceeding began with the presentation to the District Court for the Southern District of New York of letters rogatory by a Director of Inspection under the Income Tax Act of the Government of India. The Director informed the court that income tax assessments of A. K. Jain of Calcutta for various years were pending before an Income-Tax Officer appointed under said Act and that records and other information of Brown Brothers, Harriman & Co. and

the Chase Manhattan Bank might be relevant to the determination of the amount Jain should be assessed. He asked that representatives of the two banks be required to appear and testify, adding "and I shall be ready and willing to do the same for you in a similar case when requested." An ex parte order was entered appointing a commissioner "to take and execute the aforesaid Letters Rogatory" and a subpoena *duces tecum* issued to Brown Brothers, Harriman & Co. Jain, later joined by that company, moved to vacate the order and quash the subpoena; the motion was denied. This appeal by Jain and Brown Brothers, Harriman & Co. followed.

■ Although our appellate jurisdiction has not been questioned, we must consider this in the first instance. United States v. Fabric Garment Co. (Eve Abrams, Witness), 383 F.2d 984 (2 Cir. 1967). If the district court had granted the motion to vacate and quash, appealability would be clear since its action would have been equivalent to the dismissal of a complaint praying for the issuance of a commission and a subpoena. Compare Horizons Titanium Corp. v. Norton Co., 290 F.2d 421 (1 Cir. 1961). The converse situation could be distinguished since the witness is able to obtain review by allowing himself to be cited for contempt—however unlikely his taking that course would be when as here he has no stake in the basic controversy. Compare Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). Such meagre authority as there is supports the appealability of an order in aid of foreign letters rogatory, Janssen v. Belding-Corticelli, Ltd., 84 F.2d 577 (3 Cir. 1936), as has long been held with respect to orders enforcing the subpoenas of independent administrative agencies, Ellis v. I. C. C., 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1914). The distinction between such cases and the *Alexander-Cobbledick* line of authority is that in these instances the proceeding before the district court to compel testimony stands separate from the main controversy. We have reached the same result in the analogous cases of the grant of a subpoena in aid of an extradition proceeding, First Nat'l City Bank v. Aristequieta, 287 F.2d 219, 222–223 (2 Cir. 1960), see also Aristequieta v. Jiminez, 274 F.2d 206 (5 Cir. 1960), both vacated and remanded with instructions to dismiss as moot, 375 U.S. 48, 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963); and of an order to appear before the Internal Revenue Service, see In re Albert Lindley Memorial Hospital, 209 F.2d 122 (2 Cir. 1953), cert. denied sub nom. Cincotta v. United States, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954); United States v. Kulukundis, 329 F.2d 197 (2 Cir. 1964). We follow these rulings here.

The order under appeal was made and the subpoena issued under the asserted authority of 28 U.S.C. § 1782 which, as amended in 1964, provides:

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person * * *."

Earlier versions of the statute had authorized an appropriate district court to take the deposition of a witness for use in a "suit for the recovery of money or property depending in any court in any foreign country", 12 Stat. 769 (1863), "in any civil action pending in any court in a foreign country", 62 Stat. 949 (1948), and finally "in any judicial proceeding pending in any court in a foreign country", 63 Stat. 103 (1949). The reports of the Judiciary Committees of both houses offered the following explanation of the 1964 amendment, which was part of a bill for general re-

form of judicial procedures in litigation with international aspects:

"Subsection (a) of proposed revised section 1782 also describes the foreign proceedings in connection with which U. S. judicial assistance may be granted. A rather large number of requests for assistance emanate from investigating magistrates. The word 'tribunal' is used to make it clear that assistance is not confined to proceedings before conventional courts. For example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries. (See Lelievre in Letters Rogatory 13 (Grossman ed., 1956).) In view of the constant growth of administrative and quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the United States may be as impelling in proceedings before a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court. Subsection (a) therefore provides the possibility of U. S. judicial assistance in connection with all such proceedings. * * *" H.R.Rep. 1052, 88th Cong. 1st Sess. p. 9 (1963); Sen.Rep. 1580, 88th Cong. 2d Sess.; 1964 U. S. Code Cong. & Adm. News p. 3788.

The District Court held that the inquiry before the Income-Tax Officer was "a proceeding in a foreign or international tribunal" and that, in light of the announced purpose of Congress to broaden the assistance our courts were to render to foreign countries,[1] its discretion should be exercised favorably.

Under Indian Income Tax procedure the annual return is simply a step toward the making of an assessment, with nothing due from the taxpayer until that has been done. Assessment is made by the Income-Tax Officer either on the basis of the return alone if he is satisfied with it, Indian Income Tax Act of 1961, § 143(1), or after serving a notice requiring the taxpayer to attend at his office or to produce "any evidence on which the assessee may rely in support of the return." § 143(2). In the latter event, which evidently has occurred in Jain's case, the Officer "after hearing such evidence as the assessee may produce and such other evidence as the Income-Tax Officer may require on specified points, and after taking into account all relevant material which the Income-Tax Officer has gathered," shall make an assessment, § 143(3); if the assessee fails to furnish all the desired information, the Officer may make a "best judgment assessment." The taxpayer can appeal an assessment, in the first instance to an Appellate Assistant Commissioner, § 246, and thereafter to an Appellate Tribunal, § 253. In such event the Income-Tax Officer defends his assessment, § 250. While the Government cannot appeal, Jain says this is of little consequence since the Income-Tax Officer is obliged to "follow the orders, instructions and directions" of the Central Board of Revenue, § 119; the Director counters that these instructions are general and that, as the High Court of Madras has said, the Board cannot

1. The court quoted the general statement of the Senate Judiciary Committee recommending passage of the bill containing the amendment:

"Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.

"It is hoped that the initiative taken by the United States in improving its procedure will invite foreign countries similarly to adjust their procedures." 1964 U.S.Code Cong. & Adm. News p. 3783.

"tell the assessing authority, the Income-Tax Officer, what to do and what not to do in regard to a particular assessment" since this "would be against the grain of the judicial powers which the officer is supposed to exercise." S. B. Adityan v. First Income-Tax Officer, 52 I.T.R. 453, 460 (1964).

While Congress materially expanded the scope of 28 U.S.C. § 1782 in 1964, it did not go to the full extent of authorizing a district court to execute letters rogatory whenever requested by a foreign country or a party there; the testimony must be "for use in a proceeding in a foreign or international tribunal." The amendment must be interpreted in terms of the mischief it was intended to rectify. The reference in the quoted committee reports to proceedings "pending before investigating magistrates in foreign countries" was explained by the citation of a 1956 paper pointing out that about half of the letters rogatory received by the French Consulate in New York—and enforced by the United States District Courts—issued from *juges d'instruction*, whose investigations were only dubiously within 28 U.S.C. § 1782 as it then stood. The *juge d'instruction* occupies a place in the French legal system somewhat parallel to that of the grand jury in the Anglo-American system, in that it is he who decides whether the evidence against a person accused of a major crime is sufficient to require him to stand trial. The *juge d'instruction* usually enters the case at the request of the *procureur*, the counterpart of the district attorney, but he may also be seized of the case by the complaint of the *partie civile*, the injured party, although in the latter case intervention of the *procureur* must be obtained. Once seized of the case, the *juge* assumes a more active role than a grand jury would. He is in charge of the investigation though he delegates the detective work to the police. It is he rather than the *procureur* who questions the witnesses, and except when the accused is being interrogated, none of the parties may even be present at the examination. But the extent of the participation of the *juge* in the investigation—greater than that of the *procureur* or the *partie civile*, and of course greater than the grand jury's—does not mean that he has an institutional interest in a particular result. "The *juge d'instruction* represents neither the interest of the police nor that of the state prosecutors * * *." Anton, L'Instruction Criminelle, 9 Am.J. Comp.L. 441, 443 (1960). On the contrary, the prosecution is represented before the *juge d'instruction* by the *procureur* to the same, though by American standards small, extent that the accused is by his counsel. The *juge* does not have the interest in obtaining the conviction of the accused that he would have if his office were an arm of the prosecution albeit one which was adjured to act impartially. Rather, "his aim is simply to ensure that justice is done." Anton, loc. cit. supra.

In contrast to the French *juge d'instruction*, the Indian Income-Tax Officer has the sole responsibility for making the government's argument as well as for evaluating it. As the Supreme Court of India has held,

"The income-tax authorities who have power to assess and recover tax are not acting as judges deciding a litigation between the citizen and the State: they are administrative authorities whose proceedings are regulated by statute, but whose function is to estimate the income of the taxpayer and to assess him to tax on the basis of that estimate. Tax legislation necessitates the setting up of machinery to ascertain the taxable income, and to assess tax on that income, but that does not impress the proceeding with the character of an action between the citizen and the State." S. S. Gadgill v. Lal & Co., 53 I.T.R. 231, 238 (1964).

We do not hold that the expansion effected by the 1964 amendment is limited to investigating magistrates similar to the *juge d'instruction* and still less that a foreign agency must satisfy all the requirements for adjudicative proceedings under the Administrative Procedure Act, 5 U.S.C. § 554, to qualify as a "tribunal"

under 28 U.S.C. § 1782. On the other hand, that concept is not so broad as to include all the plethora of administrators whose decisions affect private parties and who are not entitled to act arbitrarily, and one useful guideline is the absence of any degree of separation between the prosecutorial and adjudicative functions.

Another consideration leading to the conclusion that an Indian Income-Tax Office is not a "tribunal" within 28 U.S.C. § 1782—perhaps rather the same one stated in a narrower way—is that a tax assessor scarcely fits the notion that most American legislators would entertain of what constitutes a "tribunal." Congressmen, who have doubtless had their income tax returns audited and sometimes questioned like the rest of us, would hardly have considered that the procedures of the Internal Revenue Service leading to a determination of deficiency or an assessment were proceedings in a "tribunal." This is so even though the announced objectives of a district conference include providing "a fair and courteous hearing at which the taxpayer may discuss the issues," making certain "that all pertinent facts are included in the record and are considered in arriving at the proposed recommendation," and assuring "that the pertinent provisions of the Internal Revenue Code are applied in arriving at the proposed recommendation and that the proposed recommendation is in accord with the interpretations of the Internal Revenue Service as expressed in regulations and rulings," Federal Tax Regulations § 601.105(c) (4). Neither do we believe that most Congressmen would regard the Appellate Division of the Service as a "tribunal" although the pertinent Regulations speak of "proceedings," Regs. § 601.106(c), and require the conferee "to determine the correct amount of the tax, with strict impartiality as between the taxpayer and the Government, and without favoritism or discrimination as between taxpayers." Regs. § 601.106 (f) (1). Granted that the Regulations adjure officials of the I.R.S. to act fairly, they remain tax collectors and not adjudicators; they do not have, and are not supposed to have, the complete objectivity normally associated with a "tribunal." As explained in Bull v. United States, 295 U.S. 247, 259–260, 55 S.Ct. 695, 698, 79 L.Ed. 1421 (1935), our law has always distinguished between the assessment of a tax and proceedings, whether administrative or judicial, wherein the sovereign affords "the taxpayer an opportunity at some stage to have mistakes rectified." See also United States v. Rindskopf, 105 U.S. 418, 422, 26 L.Ed. 1131 (1881). Thus the Internal Revenue Service is not commonly regarded as a "tribunal" but the Tax Court, "an independent agency in the Executive Branch of the Government" I.R.C. § 7441, is— and was equally so when it was called the Board of Tax Appeals. See Old Colony Trust Co. v. C. I. R., 279 U.S. 716, 725, 49 S.Ct. 499, 73 L.Ed. 918 (1929). Congress would thus not have expected that 28 U.S.C. § 1782 could be invoked by foreign tax assessors unless their nature and functions are significantly different from ours.

■ We cannot see that the points relied upon by the Director establish this as regard the Indian Income-Tax Officer. Much is made of the provision in § 131 of the Income Tax Act that the Officer, along with the Appellate Assistant Commissioner and the Commissioner, "shall, for the purpose of this Act, have the same powers as are vested in a court under the Code of Civil Procedure 1908, when trying a suit in respect of [discovery and inspection and compelling oral and written testimony]," and of § 136, which provides that "Any proceeding under this Act before an Income tax authority shall be deemed to be a judicial proceeding within the meaning of sections 193 and 228 and for the purposes of section 196 of the Indian Penal Code," relating to perjury and intentionally insulting a public official in any judicial proceeding. The existence of similar powers in the Internal Revenue Service, I.R.C. §§ 7602–06, with appropriate sanctions, does not convert our own tax assessors into a "tribunal"; as said in Upshur

County v. Rich, 135 U.S. 467, 472, 10 S. Ct. 651, 34 L.Ed. 196 (1890), assessors are often empowered to swear witnesses "without altering the character of their functions." Neither is the Income-Tax Officer differentiated by statements by Indian courts which have been cited to us that he must act without bias and give the assessee a fair hearing; so must American tax assessors. A fair assessor is still an assessor, not a "tribunal" as that term is used in ordinary speech.

Appellants challenge the order of the district court on several grounds in addition to the one we have sustained. They argue that, either as a matter of law or in the exercise of discretion, our courts should not utilize the authority conferred by 28 U.S.C. § 1782 in tax matters at any stage. Insofar as the argument rests on the traditional reluctance of courts of one nation to assist in collecting the taxes of another, appellee counters with the position that any such policy should not extend to the mere obtaining of information. In answer to another pivot of the argument, that since tax treaties usually contain provisions for the exchange of information, Congress could hardly have meant to jeopardize this country's negotiating position by a unilateral grant, appellee, citing the preamble to the Congressional reports, see fn. 1, says Congress intended to do precisely that. Appellants also raise the question of reciprocity, cf. Hilton v. Guyot, 159 U.S. 113, 210, 229, 16 S.Ct. 139, 40 L.Ed. 95 (1895), as bearing on the exercise of the district court's discretion; they say that the Director of Inspection would be unable to make good on his courteous offer "to do the same for you," since the Indian Code and Rules of Civil Procedure permit commissions to issue only in aid of proceedings in foreign courts. Code of Civil Procedure, §§ 75, 78; Rules 19, 20(a). Our holding that an Indian Income-Tax Officer is not a "tribunal" within 28 U.S. C. § 1782 permits us to leave these troublesome questions for another day; conceivably Congress will clarify its command in the meanwhile.[2]

The order is reversed with instructions to vacate the commission and quash the subpoena.

2. If the issue in regard to the tax treaties should become relevant in a subsequent case, we suggest that the district court invite the Department of State to express its views.