CHICAGO AND NORTH WESTERN
TRANSPORTATION COMPANY, a
corporation, Plaintiff,

v.

SOO LINE RAILROAD COMPANY,
a corporation, Defendant.

No. 73 C 1018.

United States District Court,
N. D. Illinois, E. D.

Feb. 5, 1974.

Louis T. Duerinck, Christopher A. Mills, Chicago, Ill., for Chicago and N. W. Transp. Co.

Gorham, Adams, White & DeYoung, Chicago, Ill., C. Harold Peterson, Soo Line R. Co., Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

MARSHALL, District Judge.

This matter is before the court on plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and defendant's cross-motions pursuant to Rules 12(b) (6) and 56 of the Federal Rules of Civil Procedure, for a dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted or in the alternative for summary judgment. Jurisdiction is founded on 28 U.S.C. §§ 1331(a) and 1337. For the reasons hereinafter stated, plaintiff's motion is Granted and defendant's motions are Denied.

Plaintiff Chicago and North Western Transportation Company (hereafter "North Western") seeks to recover $10,756.64 from defendant Soo Line Railroad Company (hereafter "Soo") as the total costs North Western incurred in re-icing 560 refrigerator cars delivered to it by the Soo.

North Western's Wood Street Terminal operates as a receiving and distribution point for carloads of perishable produce moving to Chicago on common carriers by rail. In this capacity North Western operates as a switching carrier. It receives no portion of the through line-haul freight charges collected from the shipper.

Common carriers by rail are obligated by their tariffs to provide protection against heat and cold to shipments of perishables in refrigerator cars. This obligation extends throughout the period when a perishable shipment is under the control of a rail carrier. Consequently, the North Western is obligated to provide protective services to shipments of perishables while they are under its control at the Wood Street Terminal.

In return for providing this protective service, the originating carrier is paid a standard refrigeration service charge by the shipper. The charge is set forth in National Perishable Freight Committee Perishable Protective Tariff 18, I.C.C. No. 37, published and on file with the Interstate Commerce Commission, pursuant to 49 U.S.C. § 6(1) and covers the shipper's obligation to pay for protective services given between the points of origin and final destination.

The rights and obligations of rail carriers between each other with respect to through shipments moving over more than one carrier are covered by division agreements among the carriers. These division agreements include National Perishable Freight Committee Division Sheet 7 (hereafter "Division Sheet 7") and National Perishable Freight Committee Circular 20–F (hereafter "Circular 20–F") to which North Western and Soo are parties. Switching carriers are paid for re-icing services performed on their lines pursuant to Division Sheet 7. Item 124 of Division Sheet 7, applicable to re-icings performed at stations in Illinois, provides that in the case of the immediate re-icings of cars upon delivery, the originating carrier pays the switching carrier from the standard refrigeration rate paid to it by the shipper.

Rule 235 of Circular 20–F and Rules 225(B) and (D) of Perishable Protective Tariff 18 in part provides:

Rule 235 of Circular 20–F, Part 2—

"Applicable only for account of the Chicago and North Western Railway Company . . . unless otherwise provided by tariff, billing, local agreement, established practice or special instructions, cars under refrigeration should be re-iced to capacity before delivery to connections, or agent of delivering line should arrange for immediate re-icing by connection, if any icing facilities are maintained at such interchange or receiving line."

Rules 225(b) and (D) of Perishable Protective Tariff 18—

225(b)

"After arrival of car in the terminal train yard serving destination, and up to time car is in process of unloading on team track, or until private lock or seal has been applied, or until placed on private track, car will be re-iced to capacity when necessary . . . ."

225(D)

" . . . Cars placed on hold, inspection or delivery tracks, at intermediate stop points, hold points, or at destination with bunkers less than three-fourths full of ice, will be re-iced to capacity and expense included in Standard Refrigeration charge. . . ."

Read together these provisions obligate a rail carrier delivering a refrigerator car to a switching line to deliver the car with its ice bunkers at least three-fourths full. Rules 225(B) and (D) further provide that the cars should be re-iced to capacity by the switching line when they arrive with bunkers less than three-fourths full and thereafter when necessary.

During the period June 1, 1965 to December 31, 1969, Soo delivered 560 refrigerator cars to North Western for switch movement at the Wood Street Terminal: 317 were less than three-fourths full on delivery; 243 required refilling subsequent to their delivery and during the time the cars were under North Western's control. Ten of the cars were re-iced more than once. Accordingly, North Western performed 570 re-icings of the Soo's cars during the above period.

The cost to North Western of re-icing the cars during the time they were under its control was $24,935.60, including the cost of the ice ($24,092.00) and the cost of supervising the re-icing operations ($843.60). Soo refuses to pay this amount. Instead, it argues that the North Western has received the full compensation to which it is entitled, from the amount paid to it under Division Sheet 7, Item 124 ($14,178.96) which included the partial cost of supervision paid by the originating carrier. This amount was paid out of the standard refrigeration service charge collected from the shipper and was not paid by Soo unless Soo happened to be the originating carrier.

█ North Western seeks the difference between its actual cost of re-icing services performed on Soo's refrigerator cars and the standard refrigeration rate collected by North Western from the originating carrier pursuant to Item 124 of Division Sheet 7. The dispute reduces to whether North Western can recover under the provisions of the division agreements between North Western and Soo, North Western's costs over and above amounts collected by it under Item 124 of Division Sheet 7.

The court has concluded that North Western is entitled to reimbursement for its total cost of re-icing Soo's cars. North Western's tariffs obligate it to re-ice Soo's cars. It should not be penalized for fulfilling its tariff obligations. North Western does not receive any revenue from the through line-haul charge. Thus it has no revenue against which to offset the cost of re-icing except that which is provided by Item 124 of Division Sheet 7. Soo Line, on the other hand, may offset any expense incurred because of re-icing against the line-haul revenue generated by the cars.

Division Sheet 7, Item 30-K, paragraph (A)13 reads:

"Rule 225

"(a) Cost of ice or ice and salt supplied, also switching, when assessable against the shipment on basis of section 4 will be credited to the carrier on whose rails services performed or for whose account the services rendered.

"(b) When cost of ice or ice and salt is included in Standard Refrigeration Service Charge, see paragraph D."

Paragraph D, noted in section (b), provides that bills for ice and salt supplied

in connection with shipments moving under the standard refrigeration service should be submitted to the originating carrier on the basis of Items 100–198 of Division Sheet 7.

Soo, in delivering refrigerator cars to North Western for switching operations, constitutes a line-haul carrier. North Western argues that if the actual cost of re-icing is not covered by Item 124, it is entitled to charge the remaining cost to Soo, the line-haul carrier for whose account the re-icing was rendered, irrespective of whether Soo may also have been the originating carrier. See Rule 225(a) of Division Sheet 7, Item 30–K, paragraph A(13).

The court agrees with North Western's interpretation. Soo was the carrier on whose behalf North Western performed the re-icing services. If Rule 225(a) is not interpreted the way North Western suggests, Soo will receive North Western's services without cost, unless Soo was an originating carrier. Furthermore, if the cost of re-icing exceeds the amount which is provided North Western under Item 124 of Division Sheet 7, North Western will sustain a loss. That result would be contrary to the policy of fair compensation for carriers established in section 1(4) of the Interstate Commerce Act. 49 U.S.C. § 1(4). Accordingly, Soo is required to reimburse North Western for the remainder of its actual re-icing costs not paid by the originating carrier out of the standard refrigeration service charge. This is the case even if Soo was an originating carrier as well as a line-haul carrier.

■ Soo argues that the phrase "the carrier . . . for whose account the services rendered" was intended to be deleted in the reading of Rule 225(a). The language of the provision is unambiguous. Soo cannot delete the express terms of a contract with allegations concerning the interpretation of the provision by other railroads whose shipments are governed by Tariff 18 and Division Sheet 7.

North Western may recover the cost of supervision in providing icing services. Alton & S. R.R. v. United States, 49 F.2d 414, 417–418 (N.D.Cal.1931).

■ Soo has moved to dismiss North Western's complaint for failure to state a claim upon which relief can be granted, contending that Section 16(3)(f) of Title 49 of the United States Code precludes North Western's recovery. That statute reads:

"A complaint for the enforcement of an order of the commission for the payment of money shall be filed in the district court or the State court within one year after the date of the order, and not after."

North Western filed this action in 1973. Soo argues that North Western is seeking to enforce a 1962 order of the Interstate Commerce Commission which provided that charges for protective services to perishable shipments should yield to the performing party no less than the cost of services. North Western, however, is suing for the cost of services rendered pursuant to Division Sheet 7, a written contract between the parties. 49 U.S.C. § 16(3)(f) is not applicable. Accordingly, Soo's motion to dismiss on this ground is Denied.

■ The court further finds that 49 U.S.C. § 1(14)(b) does not preclude North Western's recovery. That provision reads:

"It shall be unlawful for any common carrier by railroad or express company, subject to this chapter, to make or enter into any contract, agreement, or arrangement with any person for the furnishing to or on behalf of such carrier or express company of protective service against heat or cold to property transported or to be transported in interstate or foreign commerce, or for any such carrier or express company to continue after April 1, 1941, as a party to any such contract, agreement, or arrangement unless and until such contract, agreement, or arrangement has been submitted to and approved by the Com-

mission as just, reasonable, and consistent with the public interest."

Soo argues that the failure to obtain approval of Division Sheet 7 precludes liability based on that agreement. The word "person" in Section 1(14)(b) of Title 49 does not include common carriers. Section 1(3)(a) of the same act defines "common carrier" and "person" differently. In Section 1(14)(b) Congress meticulously differentiates between "common carriers" and "persons." Thus, the Interstate Commerce Commission's approval is not required with regard to protective service arrangements between common carriers. The failure to obtain approval of Division Sheet 7 by the Interstate Commerce Commission does not defeat North Western's claim against Soo. Accordingly, Soo's motion to dismiss on this ground is Denied.

It Is Ordered and Adjudged that plaintiff North Western have judgment against defendant Soo in the amount of $10,756.64 together with its costs.